Filed 10/14/25  P. v. Kelly CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064443 |
| v. | (Super. Ct. No. C-95479) |
| TIMOTHY JOHN KELLY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Timothy John Kelly appeals following the denial of his Penal Code former section 1170.95 petition,[1] in which he sought the vacatur of his two 1993 first degree murder convictions. After issuing an order to show cause and conducting an evidentiary hearing, the court found beyond a reasonable doubt Kelly would be guilty of first degree murder under current law as a principal, an aider and abettor, or under the felony murder rule. Appointed counsel for Kelly filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and requested this court conduct an independent review of the entire record. Counsel also identified two issues to assist this court in its review. Kelly was given an opportunity to file a supplemental brief but did not do so.

Exercising our discretion under *Delgadillo, supra*, 14 Cal.5th at page 232, we have examined the entire record and found no reasonably arguable issue. We therefore affirm.

PROCEDURAL HISTORY

In 1993, a jury convicted Kelly of two counts of first degree murder (§ 187, subd. (a)), one count of first degree burglary (§§ 459, 460), first degree robbery (§§ 211, 212.5, subd. (a)), and receiving stolen property (§ 496, subd. (a)). The jury found true the special circumstances of murder while engaged in the commission of robbery (§ 190.2, subd. (a)(17)(i)) and burglary (§ 190.2, subd. (a)(17)(vii)), and multiple murders (§ 190.2, subd. (a)(3)). However, the jury was unable to reach a unanimous decision on the firearm use allegations (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)) as to all counts,

---

[1] Effective June 30, 2022, Penal Code former section 1170.95 was renumbered Penal Code section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will treat the petition as a request pursuant to Penal Code section 1172.6. All further statutory references are to the Penal Code.

and the court dismissed the allegations. On direct appeal to this court, the judgment was affirmed with an order to modify Kelly's presentence credits. (*People v. Kelly* (Jan. 23, 1995, G015075) [nonpub. opn.].)

In 2021, Kelly filed a petition for resentencing pursuant to section 1172.6. After briefing by the parties and the prosecutor's concession, the court found Kelly made a prima facie showing of entitlement to relief, and the court issued an order to show cause.

At the evidentiary hearing, the court considered documents from the record of conviction, including the transcripts of the 1993 trial proceedings. The parties did not submit new evidence. The court denied the petition, finding the evidence demonstrated beyond a reasonable doubt Kelly would be guilty of first degree murder under current law. Kelly timely appealed from the court's decision.

FACTS

I.

PROSECUTION'S EVIDENCE

*A. Introduction*

Robert Wrate was the owner of West Coast Drum Center. On February 28, 1992, around 1:00 pm, Wrate left the store with Kim Johnson, a manufacturer's representative, to go to lunch. Before the pair left, the store's manager overheard Wrate tell Steve Waldon, an employee who did bookkeeping, that he was going home to get more cash to put into the bank to cover a check. Ernest Garcia was a friend of Wrate's for years and had worked for Wrate for one month.

*B. The Murders of Wrate and Johnson*

On February 29, 1992, Wrate and Johnson were found shot to death in Wrate's home in Orange. Their deaths were estimated to have

3

occurred on February 28, between 3:30 p.m. and 6:30 p.m. Johnson was shot twice, once in the left hip area and once in the head. Wrate was also shot twice, once in the left side of his jaw and once in the front of his jaw. Wrate had approximately $2,200 in his trousers. In the house, four .45 caliber casings were found.

Police investigating the crime scene also noted the house did not show signs of ransacking. Indentations in the carpet indicated something had been removed from a closet. One of Wrate's dogs was found inside a bathroom in the house.

*C. Evidence Connecting Kelly to the Murders*

A few days before the murders, Kelly asked to borrow a .45 caliber gun from his friend, K.P., for 24 hours. A firearm examiner compared a casing from K.P.'s home with the four casings found at the scene of the murders. Based on this comparison, the examiner concluded all five casings were fired from the same gun. The examiner also opined the projectiles taken from Wrate and Johnson were fired from the same gun as a projectile found in K.P.'s home. Both the casings and the projectiles came from a .45 caliber gun.

A couple of days after the murders, Garcia and Kelly met with K.P. and told him the gun was missing because it had been stolen. Kelly gave K.P. $100 as a partial payment for the gun. Later, Kelly gave K.P. items he said he took from a house he and Garcia recently burglarized.

Kelly also made statements to K.P. and a woman he was romantically interested in, J.T., about his involvement in the burglary and murders. Kelly had "hundreds" of conversations with J.T. about killings involving a victim named "Bob" who owned a music store and another victim

4

who was Bob's friend. J.T. contacted the police and wore a wire that recorded two of these conversations with Kelly.

Kelly told K.P. and J.T. that while he and Garcia were burglarizing the house, Garcia had to lock one of Wrate's dogs in a room. During the burglary, Wrate walked in and tried to call the police. Then Johnson walked into the room and Kelly held the two at gunpoint and forced them into another room.

Kelly gave K.P. and J.T. varying accounts of how the victims were killed. Kelly told K.P. he had jammed the gun while racking it and in the process of unjamming it, the gun went off, hitting Wrate in the cheek. Kelly gave the gun to Garcia and told him to finish off killing Wrate. Kelly told K.P. Garcia took the gun, shot Wrate and then shot Johnson in the head. Kelly told K.P. they had to shoot the victims because they knew who Kelly and Garcia were.

Kelly told J.T. that when he had the victims at gunpoint, he contemplated whether to let them live but ultimately decided to kill them. Kelly said he shot Johnson in the head and killed him. He then shot Wrate in the jaw. After the gun jammed, he told Garcia to shoot and kill Wrate.

Kelly told both K.P. and J.T. that he and Garcia took several items from Wrate's house. Kelly stated he sold some items to K.P.'s brother and gave away other items. J.T. had seen a clock and stereo in Kelly's room after the murders, and Kelly told her he had taken them on the day of the murders.

## II.

### DEFENSE EVIDENCE

Kelly testified in his own defense and denied committing the burglary or the murders. He explained his stories about killing Wrate and

Johnson were an attempt to impress J.T. because he wanted a relationship with her. He kept up the story with K.P. because K.P. was around J.T. Kelly found out about the murders through Garcia, Waldon, and other people at the drum store.

Kelly testified he obtained the .45 caliber gun from K.P. but loaned it to Garcia. Kelly claimed he was visiting his friend in Oceanside when the murders occurred. He admitted he received items from Waldon and Garcia whilst knowing the items were stolen from Wrate's house.

## DISCUSSION

### I.

### SECTION 1172.6

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Senate Bill No. 1437 also created procedures "for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, at p. 959.)

The process begins when a defendant previously convicted of a qualifying offense files a petition pursuant to section 1172.6. Once a superior court receives the petition, it shall appoint counsel upon petitioner's request. (§ 1172.6, subd. (b)(1)–(3).) The prosecutor must then file a response to the petition, and a reply may be filed by the petitioner. (§ 1172.6, subd. (c).) The trial court shall then "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid*.) If the petitioner makes a prima

facie showing of entitlement to relief, the court must issue an order to show cause. (*Ibid.*; *People v. Strong* (2022) 13 Cal.5th 698, 708.)

Unless the parties stipulate the petitioner is eligible for relief, the court shall hold a hearing within the prescribed time to determine whether to grant the petitioner relief. (§ 1172.6, subd. (d)(1) & (2).) At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt the petitioner is guilty of murder or attempted murder under the amended law. (§ 1172.6, subd. (d)(3).) Both parties may present "new or additional evidence to meet their respective burdens." (*Ibid.*) "[T]he court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*Ibid.*) If the court finds beyond a reasonable doubt the petitioner is guilty of murder or attempted murder under a theory that remains valid after the amendments to sections 188 and 189, the petition is denied. (*Ibid.*) However, "[i]f the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

II.

DENIAL OF SECTION 1172.6 PETITION

Here, after reviewing the evidence, the trial court found beyond a reasonable doubt Kelly would be guilty of first degree murder under a still-valid theory: as the principal, direct aider and abettor, or under the felony murder rule. The trial court's finding and denial of Kelly's section 1172.6 petition is supported by substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 [denial of a section 1172.6 petition after an evidentiary hearing is reviewed for substantial evidence].) The evidence showed Kelly

7

either personally killed Johnson or handed the gun to Garcia who then shot Johnson. He was also a direct aider and abettor in Wrate's murder as evidence in the record indicates he handed the gun to Garcia and told him to "finish . . . off" Wrate. Substantial evidence also supports Kelly's guilt as a direct aider and abettor under a felony murder theory.

Appointed appellate counsel for Kelly identified a potential issue to assist in our independent review—whether the court properly considered Kelly's out-of-court statements and testimony in its findings. The trial court found Kelly's testimony regarding his noninvolvement in the murders incredible. On appeal, "'[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge [in a court trial] or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*People v. Mumin* (2023) 15 Cal.5th 176, 202, quoting *People v. Maury* (2003) 30 Cal.4th 342, 403.) The record supports the trial court's finding Kelly's defense testimony was not credible.

Kelly's counsel also questions whether the trial court gave appropriate consideration to the "jury's *not true* finding" on the gun use allegations when the court concluded Kelly could be convicted of murder under current law. In *People v. Cooper* (2022) 77 Cal.App.5th 393, the Court of Appeal reversed the lower court's denial of a section 1172.6 petition because the lower court had found the defendant possessed and used a firearm, which contradicted the jury's acquittal on a charge for felon in possession of a firearm. (*Id.* at p. 398.) In *Cooper*, without any new evidence being introduced at the evidentiary hearing, the trial court found the defendant had possessed and used a firearm and explicitly relied on this finding to conclude he would be guilty of felony murder. (*Id.* at p. 417.)

8

However here, because the jury was unable to reach a unanimous verdict as to the gun use allegations, the prosecution moved to dismiss these allegations in the original proceedings and the trial court granted such. Nonetheless, in regards to Kelly's 1172.6 petition, the trial court's factual determinations with respect to Kelly's liability as a direct aider and abettor do not contradict the ultimate dismissal of the gun allegations. The evidence in the record demonstrated Kelly's involvement in the robbery, his acquisition of the murder weapon, participation in the killing of Johnson, and the encouragement of Garcia to kill Wrate.

Substantial evidence supports the trial court's conclusion Kelly would be found guilty of first degree murder under a valid theory and denial of Kelly's section 1172.6 petition. After consideration of the possible issues raised by counsel and an independent review of the entire appellate record, we find no reasonably arguable issue.

DISPOSITION

The postjudgment order denying the section 1172.6 petition is affirmed.


MOTOIKE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


GOODING, J.

9